UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PRlNCE A.Z.K. ADEKOYA, II,

                              Plaintiff,

        -vs-

MARTIN D. HERRON, Facility
Director, Buffalo Federal Detention
Facility, et al.,

                              Defendants.

**No. 6:10-CV-6646(MAT)**
**DECISION AND ORDER**

---

## I.   Introduction

Prince A.Z.K. Adekoya, II ("Adekoya" or "Plaintiff") instituted this pro se action pursuant to 42 U.S.C. § 1983, Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and other federal and state laws and statutes. All defendants worked at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, during the times relevant to the instant action. Presently before the Court are a motion to dismiss the amended complaint by Matthew Buck ("Buck"), Michael Finnigan ("Finnigan"), Terry Florian ("Florian"), Martin Herron ("Herron"), and Kurt Lasley ("Lasley") (collectively, the "Federal Defendants")[1], as well as a motion to dismiss by defendant Tracy Battaglia, L.P.N. ("Nurse Battaglia").

---

[1]     Buck, Finnigan, and Lasley are Immigration Enforcement Agents employed by ICE. Florian is a supervisory Immigration Enforcement Agent employed by ICE. Herron is a now-retired ICE official who, at all relevant times, was the Facility Director of the BFDF.

## II.   Background

### 1.   Prior Proceedings

Plaintiff is a native and citizen of Nigeria who entered the United States in 1992 or 1993. After being convicted on charges of Attempted Unlawful Use of Unauthorized Access Devices (18 U.S.C. § 1029(a)(2)) and Unlawful Use of Identifying Information Belonging to Another (18 U.S.C. § 1028(a)(7)), Plaintiff served 57 months in prison. See United States v. Adekoya, 214 F. App'x 82, 2007 WL 186659 (2d Cir. Jan. 22, 2007). Plaintiff filed habeas petitions challenging his convictions in this District and in the Southern District of New York, which were denied. See Adekoya v. Herron, 6:10-CV-06272 (W.D.N.Y.); Adekoya v. Herron, 1:10-CV-9299 (S.D.N.Y.).

As a result of these criminal convictions, Plaintiff was ordered removed from the United States. On November, 9, 2010, Plaintiff filed a petition for review challenging the removal order in the United States Court of Appeals for the Second Circuit. Adekoya v. Holder, No. 10-4585 (2d Cir. 2010). On March 28, 2013, the Second Circuit granted the petition for review in part, denied it in part, and dismissed the pending motions for a stay of removal. In particular, the Second Circuit remanded the matter to the Bureau of Immigration Appeals to address a jurisdictional issue

regarding Plaintiff's filing of a motion to reopen his administrative proceedings.

A repeat filer in federal court, Plaintiff has complained repeatedly and unsuccessfully regarding the conditions of his confinement over the years. See Adekoya v. Federal Bureau of Prisons, et al., 1:06-CV-6969 (S.D.N.Y.) (dismissed by district court on motion; affirmed on appeal); Adekoya v. Federal Bureau of Prisons, et al., 1:08-CV-1484 (S.D.N.Y.) (dismissed by district court for failure to exhaust administrative remedies; affirmed on appeal); Adekoya v. Federal Bureau of Prisons, et al., 1:08-CV-5912 (S.D.N.Y.) (dismissed by district court); Adekoya v. Chertoff, et al., 2:08-CV-3994, 2009 WL 539884 (D. N.J. Mar. 4, 2009) (dismissed by district court on initial screening), Adekoya v. Chertoff, et al., 2:08-CV-3994, 2009 WL 2990130 (D.N.J. Sept. 16, 2009) (dismissed by district court after amended complaint filed), Adekoya v. Chertoff, et al., No. 11-1990, 2011 WL 2461343 (3d Cir. Jun. 21, 2011) (per curiam) (affirming district court's grant of summary judgment in defendants' favor); Adekoya v. Yar'adua, et al., 1:09-CV-1372 (S.D.N.Y.) (dismissed for lack of subject matter jurisdiction; Second Circuit dismissed plaintiff's appeal on the grounds that it "lack[ed] an arguable basis in law or fact"); Adekoya v. Holder, et al., 1:09-CV-10325 (S.D.N.Y.) (dismissed by district court; affirmed on appeal).

### 2.    The Instant Action

On November 15, 2010, Plaintiff commenced this lawsuit against numerous defendants regarding alleged mistreatment and constitutional violations while he was housed at the BFDF. In its initial order (Docket #4), the Court (Skretny, D.J.) advised Plaintiff that due to the verbosity of his complaint, he was required to file an amended complaint in compliance with Federal Rules of Civil Procedure ("F.R.C.P.") 8 and 10. Plaintiff was instructed in detail to provide non-conclusory allegations indicating who did what, where, and when.

Plaintiff then filed a 119-page amended complaint with two volumes of exhibits totaling 178 pages. <u>See</u> Amended Complaint ("Am. Compl.") [#7][2]; Exhibits A-Z [#7-1]; Exhibits Aa-Uu [#7-2]. Plaintiff either ignored or did not understand the Court's previous instructions, for his amended complaint is as prolix, jumbled, and confusing as his initial complaint. After reviewing the amended complaint under 28 U.S.C. 1915(e)(2)(B), the Court (Siragusa, D.J.), in an order dated May 16, 2011 [#8], nevertheless permitted several claims to proceed: (1) interference with religious practices; (2) unconstitutional conditions of confinement; (3) denial of access to the courts; (4) deprivation of adequate

---

[2]

Numerals preceded by "#" in brackets refer to entries in the CM/ECF docket for this case.

medical treatment; (5) retaliation for filing grievances and complaints; and (6) discrimination and denial of equal protection based on his race and religion. Two medical defendants, Brenda Bailey, M.D. and Deborah Bishop, P.A., were terminated based on the amended complaint, and Nurse Battaglia was added.

During the pendency of this action, Plaintiff was released from the BFDF. See Docket Entry dated 7/28/11 (noting Plaintiff's updated address).

The Federal Defendants have filed a motion to dismiss [#21] pursuant to F.R.C.P. 12(b)(6) on the basis that the Court lacks subject matter jurisdiction and that the amended complaint fails to state a claim on which relief may be granted. Plaintiff timely filed opposition papers [#27], and the Federal Defendants submitted a reply.

Tracy Battaglia, L.P.N. ("Defendant Battaglia"), represented by retained counsel, answered Plaintiff's amended complaint [#12] and filed a motion to dismiss [#28] on the basis that Plaintiff's amended complaint violates the strictures of F.R.C.P. 11. The Court (Larimer, D.J.) issued a text order [#29] on May 14, 2012, with regard to Defendant Battaglia's motion to dismiss, advising Plaintiff that if he did not respond to her motion, his complaint could be dismissed without a trial. Plaintiff has not filed papers in opposition to Defendant Battaglia's motion to dismiss.

The following defendants have neither answered nor moved to dismiss the amended complaint: Bassett, Crespo, Ferrando, George, Melancone, and William. According to Plaintiff, all of these individuals are/were security officers employed by the Valley Metro Barbosa Group, a company that contracted with ICE to provide security services at the BFDF. These defendants hereinafter are referred to as "the Contractor Defendants".

The matter was transferred to the undersigned on October 30, 2013. For the reasons that follow, the Federal Defendants' motion to dismiss is granted to the extent that the Court agrees that Plaintiff has failed to state claims upon which relief may be granted and therefore all claims against the Federal Defendants are dismissed with prejudice. The motion is denied to the extent that the Federal Defendants assert lack of subject matter jurisdiction.

The Court <u>sua</u> <u>sponte</u>, under the authority of  28 U.S.C. §§ 1915(e)(2)(B)(ii)  and  1915A(b)(1),  dismisses  the amended complaint  in  its  entirety  with  prejudice  against  *all*  remaining defendants,  including  Nurse  Battaglia  and  the  Contractor Defendants, for failure to state a claim upon which relief may be granted. The Court declines to exercise supplemental jurisdiction over Plaintiff's  pendent state law claims, and those are dismissed with prejudice as well.

Nurse Battaglia's motion for dismissal pursuant to F.R.C.P. 11 is denied as moot in light of the Court's dismissal of the amended complaint against her for failure to state a claim.

**III. General Legal Principles**

**A. Motions to Dismiss for Failure to State a Claim**

Rule 12(b)(6) allows dismissal of complaints based upon the plaintiff's failure "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 556 U.S. at 679, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). However, the plaintiff's allegations must consist of more than mere labels or a "formulaic recitation of the elements of a cause of action," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), and bare legal conclusions are "not entitled to the assumption of truth." Id. at 679.

"[I]f extrinsic evidence is a part of the pleadings, it may be considered on a motion to dismiss." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123 (S.D.N.Y. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v. Time Warner Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting International Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Therefore, the district court may consider exhibits as part of the pleadings "if these documents either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." Madu, 265 F.R.D. at 123.

## B. Construction of Pro Se Pleadings

Despite the recent tightening of the standard for pleading a claim by the Supreme Court in Iqbal and Twombly, pleadings by pro se litigants continue to be accorded more deference than those filed by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Accordingly, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Board of Educ., 287 F.3d 138, 146 (2d Cir. 2002) (quotation omitted).

-8-

**C.   Elements of a <u>Bivens</u> Claim**

Jurisdiction in this action against the Federal Defendants is predicated upon <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). The Supreme Court held in <u>Bivens</u> that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978). Recovery under <u>Bivens</u> can be against the federal official in his or her individual capacity only; official capacity suits are barred. <u>Federal Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471, 486 (1994). "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994) (citing <u>Federal Deposit Ins. Corp.</u>, 510 U.S. at 486; <u>Kentucky v. Graham</u>, 473 U.S. 159, 166–67 (1985)).

To state a valid <u>Bivens</u> claim, the plaintiff must specifically allege that each defendant was personally involved in the purportedly unconstitutional conduct. <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 496–97 (2d Cir. 2006). Because personal involvement is a

prerequisite to liability under <u>Bivens</u>, federal officials who are not personally involved in an alleged constitutional deprivation may not be held vicariously liable for the acts of subordinates. <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987).

## IV.  **The Federal Defendants' Motion to Dismiss**

### A.   **Official Capacity Claims**

Plaintiff specifically makes allegations against the Federal Defendants in their official capacities. However, as they argue, it is clearly settled that "an action [pursuant to <u>Bivens</u>] . . . must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent." <u>Robinson</u>, 21 F.3d at 510. Here, there has been no consent or waiver of immunity from suit. Accordingly, Plaintiff's amended complaint must be dismissed to the extent that he has pled or attempted to plead official capacity claims against the defendants. See <u>id.</u>

### B.   **Lack of Personal Involvement**

The Federal Defendants have moved to dismiss on the bases that Plaintiff has failed to establish subject matter jurisdiction; failed to allege sufficient personal involvement on their parts in the purported constitutional violations; and has failed to state any constitutional claims upon which relief may be granted.

The Court agrees that Plaintiff's attempts to show personal involvement by the Federal Defendants are inadequate. For instance, with respect to former BFDF director Herron, Plaintiff alleges that he was the "principal architect of the policy that set forth and oversees the implementation of the rules and regulations of the facility" and that "under [Herron's] directorship," he was "denied [a] prayer mat" so that he could practice his professed faith of Spiritism. Am. Compl., pp. 25-26 [#7]. Plaintiff alleges that Herron is responsible for all of the constitutional violations he suffered by virtue of Herron's former position as Facility Director at the BFDF.

These allegations are similar to those that the Supreme Court found inadequate in Iqbal, where the plaintiff alleged that the FBI director and former United States Attorney General "knew of, condoned, and willfully and maliciously agreed to subject [him to harsh conditions of confinement] as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." Iqbal, 129 S. Ct. at 1951. The Supreme Court rejected these claims as "bare assertions" that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim." Id. (internal quotations omitted). Such "conclusory" allegations are "not assumed to be true" for purposes of a opposing a motion to dismiss. Id.

Even assuming the Amended Complaint properly alleges personal involvement by any of the named defendants, the Court cannot find that Plaintiff has stated any legally cognizable claims against any of them, as discussed further below.

### C.   Failure of the Amended Complaint to State a Claim

#### 1.   First Cause of Action: "Freedom of Speech & Religion"

The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. " U.S. CONST., amend. I. "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). However, Plaintiff here is not a prisoner; he is a civil detainee. In addition, his claim is brought pursuant to Bivens, and it is unclear whether an implied cause of action for damages lies under Bivens against federal officials for violations of the First Amendment's Free Exercise Clause.

In Iqbal, the Supreme Court assumed without deciding that a Bivens claim is available to remedy deprivation of a prisoner's free exercise rights, but its opinion suggested skepticism on the issue:

> Because implied causes of action are disfavored, the
> Court has been reluctant to extend <u>Bivens</u> liability "to
> any new context or new category of defendants." That
> reluctance might well have disposed of respondent's First
> Amendment claim of religious discrimination. For while we
> have allowed a <u>Bivens</u> action to redress a violation of
> the equal protection component of the Due Process Clause
> of the Fifth Amendment, we have not found an implied
> damages remedy under the Free Exercise Clause. Indeed, we
> have declined to extend <u>Bivens</u> to a claim sounding in the
> First Amendment. <u>Bush v. Lucas</u>, 462 U.S. 367, 103 S.Ct.
> 2404, 76 L.Ed.2d 648 (1983).

<u>Iqbal</u>, 556 U.S. at 675 (some citations and internal quotation marks

omitted). However, the <u>Iqbal</u> court then assumed for purposes of the

case before it that the respondent had a Free Exercise claim under

<u>Bivens</u>.[3]  The Federal Defendants here have not raised this issue.

The Court therefore assumes, <u>arguendo</u>, that there is an implied

right of action sounding in the Free Exercise Clause under <u>Bivens</u>,

as it makes no difference to the resolution of the present case.

In the prison context, the Free Exercise Clause is subject to

some limitation, given both "the fact of incarceration" and various

"valid   penological   objectives[,]"   including   "institutional

security." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987).

---

[3]

But <u>see</u> <u>Turkmen v. Ashcroft</u>, 915 F. Supp.2d 314, 352 (E.D.N.Y. 2013)
(acknowledging <u>Iqbal</u>'s reluctance to extend <u>Bivens</u> but finding, as matter of
first impression, that damages under <u>Bivens</u> would be implied to remedy alleged
deprivation of free exercise rights of Arab and Muslim alien former detainees who
were held in federal detention facility on immigration violations in wake of 9/11
terrorist attacks; there was no remedy for violation of detainees' free exercise
rights in absence of <u>Bivens</u> claim, and contrary to federal officials' arguments,
national security concerns implicated by 9/11 attacks and their aftermath did not
counsel hesitation in implying <u>Bivens</u> remedy for violation of detainees' right
to free exercise of religion) (cited with approval in <u>Skurdal v. Federal
Detention Center</u>, No. C12-706 RMS-MAT, 2013 WL 5313192, at *11 (W.D. Wash.
May 21, 2013)).

-13-

Case 6:10-cv-06646-MAT-JWF   Document 32   Filed 11/19/13   Page 14 of 37


In O'Lone, the Supreme Court held that a challenged prison regulation is judged "under a 'reasonableness' test less restrictive than that ordinarily applied" to Free Exercise claims. Id. at 349. A regulation that burdens a prisoner's protected right passes constitutional muster "'if it is reasonably related to legitimate penological interests.'" Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). See also, e.g., Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006).

The Second Circuit has stated that as a threshold issue,[4] a inmate must show that the disputed policy "substantially burdens his sincerely held religious beliefs." Salahuddin, 467 F.3d at 274-75 (citing Ford v. McGinnis, 352 F.3d 582, 591 (2d Cir. 2003)). "Substantial burden" has not been defined so narrowly as to require plaintiffs "to show that they either have been prevented from doing something their religion says they must, or compelled to do something their religion forbids." Id.; McEachin v. McGuinnis, 357 F.3d 197, 203 (2d Cir. 2004) (citation omitted). However, the

---

[4]
    The Second Circuit has noted that, following the invalidation of Religious Freedom Restoration Act, its sister circuits are now "apparently are split over whether prisoners must show a substantial burden on their religious exercise in order to maintain free exercise claims." Ford, 352 F.3d at 592 (comparing Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003) (finding "no support for" defendants' argument that it is "a prerequisite for the inmate to establish that the challenged prison policy 'substantially burdens' his or her religious beliefs"), with Levitan v. Ashcroft, 281 F.3d 1313, 1320-21 (D.C. Cir. 2002) (requiring prisoners demonstrate that free exercise of religion substantially burdened)). The Ford panel held that since the plaintiff had not disputed the application of the "substantial burden" requirement, it would proceed as if the requirement applied. Id.; see also Salahuddin, 467 F.3d at 274-75 & n.5 (similar).

Second Circuit has noted, not every possible restriction on religious practices is a violation, and "[t]here may be inconveniences so trivial that they are most properly ignored." McEachin v. McGinnis 357 F.3d 197, 203 n.6 (2d Cir. 2004). In this respect, the arena of Free Exercise law "is no different from many others in which the time-honored maxim 'de minimis non curat lex' applies." Id. That is, "[[d]e minimis burdens on the free exercise of religion are not of constitutional dimension." Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999).   In Plaintiff's first cause of action for interference with his religious beliefs, he alleges, in pertinent part, that (1) all defendants "ignored" Plaintiff's "quest for practicing his faith as Spiritism" (Docket #7, p. 95); (2) all defendants "automatically canceled" Plaintiff's attempts to sign up for religious services (Docket #7, p. 96); and (3) all "defendants denied or disapproved" of his request for a prayer mat (Docket #7, p. 96).

Plaintiff's allegation that his "quest for practicing his faith" was "ignored" is too vague and conclusory to allege any element of a Free Exercise claim. So too is Plaintiff's allegation that his requests to attend religious services were "automatically canceled." Only his allegation that he was "denied or disapproved" a "prayer mat" remotely addresses a required element of a Free Exercise claim. However, Plaintiff has not alleged that the lack of

a prayer mat substantially burdened his religious activities or violated a "sincerely held belief", much less that it prevented him from practicing his professed faith of Spiritism. Clearly, the lack of a prayer mat did not prevent Plaintiff from practicing his religion entirely. See LaPointe v. Walker, No. 06-952-DGW, 2010 WL 3724274, at *4 (S.D. Ill. Sept. 15, 2010) ("[T]he lack of access to a prayer rug did not substantially burden LaPointe's right to the free exercise of religion. . . . LaPointe was free to practice his religion by alternative means. . . ."); see also, e.g., Swank v. Tanner, Civil Action No. 11-2677-DEK, 2012 WL 3815635, at *4 (E.D. La. Sept. 4, 2012) (similar).

Also under this cause of action's heading, Plaintiff also alleges that Ferrando, a security officer at the BFDF and one of the Contractor Defendants, retaliated against him by removing his name from the sign-up sheets for religious services after Plaintiff filed a grievance against Ferrando. Although prison officials may not retaliate against prisoners for exercising their constitutional rights, see Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988)), such claims are typically viewed with skepticism since "prisoners can claim retaliation for every decision they dislike." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quotation omitted). "A complaint of retaliation that is 'wholly conclusory' can be

dismissed on the pleadings alone." <u>Graham</u>, 89 F.3d at 79 (citation omitted).

A plaintiff alleging retaliation bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. <u>Graham v. Henderson</u>, 89 F.3d at 79 (citation omitted). If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have taken the adverse action "even in the absence of the protected conduct." <u>Mount Healthy Sch. Dist. v. Doyle</u>, 429 U.S. 274, 287 (1977).

Here, Plaintiff has alleged that he filed a grievance against Ferrando for denying him access to the law library and "quiet-room". <u>See</u> Am. Compl., p. 27; <u>see</u> <u>also</u> Ex. Qq to Am. Compl. Therefore, Plaintiff has alleged facts plausibly suggesting that he was engaged in protected conduct. <u>See</u> <u>Davis v. Goord</u>, 320 F.3d 346, 352-53 (2d Cir. 2003) (filing of prison grievances is activity protected by the First Amendment).

Plaintiff asserts that as a result Ferrando removed his name from the sign-up list for attendance of religious services at the BFDF. Regarding the second element, the Second Circuit defines "'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from

-17-

exercising . . . constitutional rights.'" <u>Gill</u>, 389 F.3d at 381 (quoting <u>Davis v. Goord</u>, 320 F.3d 346, 353 (2d Cir. 2003), <u>superseded by</u> 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003) (emphasis removed)). Plaintiff has alleged facts plausibly suggesting that he suffered an adverse action. <u>See</u>, <u>e.g.</u>, <u>Rivers v. Woosley</u>, No. 4:12-CV-P97-M, 2012 WL 4343752, at * (W.D. Ky. Sept. 21, 2012).

Several factors may be considered in determining whether a causal connection exists between the detainee's protected activity and a prison official's actions. <u>Baskerville v. Blot</u>, 224 F. Supp.2d 723, 732 (S.D.N.Y. 2002) (citing <u>Colon</u>, 58 F.3d at 873). Those factors include (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the detainee's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. <u>Id.</u> (citing <u>Colon</u>, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." <u>Id.</u> The only factor as to which Plaintiff has made any allegations is "temporal proximity", insofar as Plaintiff states that "[a]s soon as [he] filed a grievance against Security Officer J. Ferrando[,]" "that was when . . . Ferrando started to deny [P]laintiff's access to practicing his faith as Spiritism by

canceling [P]laintiff's name from the religious services sign up sheets." Am. Compl., p. 27-28. However, Plaintiff has submitted correspondence dated April 27, 2010, from Supervisory ICE Agent Terry Florian  addressing Plaintiff's myriad complaints. This document defeats a finding of a causal inference. In particular, Florian noted that due to the number of detainees at the BFDF, a detainee may sign up for one (1) religious service; he reminded Plaintiff that this policy is set forth in the detainee handbook at page six. See Ex. I [#7-1]. Florian went on to note, "As we have discussed you have been listed as going to Muslim service. Your name was removed from the Protestant list because you are listed as attending Muslim service." See id. This correspondence prevents the Court from reasonably drawing any inference that Plaintiff's removal from the religious services list was done for an improper, retaliatory reason. Accordingly, Plaintiff's claim of retaliation against Security Officer Ferrando fails as a matter of law.

> **2.      Second Cause of Action: "Unlawful Search and/or Seizure" in Retaliation for Exercise of First Amendment Rights**

The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell" because "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the

needs and objectives of penal institutions." <u>Hudson v. Palmer</u>, 468
U.S. 517, 525-26 (1984); <u>see</u> <u>also</u> <u>Willis v. Artuz</u>, 301 F.3d 65, 66-
67 (2d Cir. 2002). Here, Adekoya is not a convicted prisoner but
instead is a civil detainee. Neither the Supreme Court nor the
Second Circuit has determined the appropriate standard for
considering whether a search violates the Fourth Amendment rights
of an involuntarily civilly committed person. Several courts have
applied the Fourth Amendment standard applicable to a pretrial
detainee to a civil detainee. <u>E.g.</u>, <u>Serna v. Goodno</u>, 567 F.3d 944,
949 (8th Cir. 2009) (citing <u>Youngberg v. Romeo</u>, 457 U.S. 307, 320-
21 (1982) (analyzing, under the Fourteenth Amendment's the Due
Process Clause, the constitutionality of the conditions of
confinement for an involuntarily committed, mentally disabled man;
court drew an analogy between pretrial detainees and civilly
committed persons as two groups that could be subjected to liberty
restrictions "reasonably related to legitimate government
objectives and not tantamount to punishment"). In <u>Serna</u>, the Eighth
Circuit relied on <u>Youngberg</u>, 457 U.S. 307, <u>supra</u>, to conclude that
in the Fourth Amendment context, civilly committed persons should
be treated as equivalent to pretrial detainees "because
'confinement in a state [or federal] institution raise[s] concerns
similar to those raised by the housing of pretrial detainees, such
as the legitimate institutional interest in the safety and security

-20-

of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations[.]" Serna, 567 F.3d at 949.

The seminal case regarding Fourth Amendment rights of pretrial detainees is Bell v. Wolfish, 441 U.S. 520 (1979), wherein the Supreme Court considered a requirement that pretrial detainees remain outside their rooms during routine "shake-down" inspections by prison officials. Adekoya here raises a similar claim, asserting that his quarters impermissibly were searched while he was absent. The lower courts in Wolfish had invalidated the room-search rule, citing privacy concerns allegedly grounded in the Fourth Amendment. The Supreme Court, however, found that "any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope." 441 U.S. at 557. Thus, even if a pretrial detainee "retain[ed] such a diminished expectation of privacy after commitment to a custodial facility," the room-search rule did not violate the Fourth Amendment as "[n]o one can rationally doubt that room searches represent an appropriate security measure" and permitting detainees to observe the searches did "not lessen the invasion of their privacy[.]" Id.

Based on Wolfish, supra, Adekoya cannot be heard to complain that the searches of his living area at the BFDF were wrongfully conducted in his absence. Accordingly, his allegations that he was

subjected to invasions of his privacy and unreasonable searches and seizures while he was housed at the BFDF fail to state a cognizable constitutional claim.

Adekoya also contends that the room-searches were part of a pattern of harassment in retaliation for his exercise of his constitutional rights. This claim is fatally defective because Adekoya has failed to allege either personal involvement by any particular defendant or any non-conclusory facts from which an inference of causation reasonably may be drawn. See, e.g., Pezant v. Gonzalez, No. 1:11-cv-00564, 2012 WL 2160111, at *4 (E.D. Cal. June 13, 2012) ("Plaintiff's conclusory allegations that he was validated [as a gang member] and kept in administrative segregation because he filed prison grievances or because of the ideology of the materials he possessed are insufficient to state a plausible claim for retaliation in violation of the First Amendment.") (citing Iqbal, 556 U.S. at 678).

In addition, Adekoya makes allegations under this cause of action's heading to the effect that items of his personal property were damaged or destroyed (e.g., his snacks were "dumped"; guards stepped on his towel and left footprints; his radio was broken). Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as "adequate state post-deprivation remedies are

available." <u>Hudson</u>, 468 U.S. at 533. New York law provides such a remedy in the form of an action before the New York Court of Claims. <u>See</u> N.Y. CT. CL. ACT § 9. Therefore, Plaintiff does not have a constitutional claim against "Defendants 1-12" for the destruction and/or theft of his personal property. <u>See</u> <u>Dorsey v. Fisher</u>, 9:09-CV-1011GLSD, 2010 WL 2008966, at *10-11 (N.D.N.Y. May 19, 2010) ("Even if [the plaintiff-inmate] had identified which particular defendant was responsible for the theft, his claim would still fail" because "New York law provides . . . a remedy in the form of an action before the New York Court of Claims.") (citing <u>Hudson</u>, 468 U.S. at 533; other citations omitted).

### 3. Third Cause of Action: "Due Process/Equal Protection Clause" (Amended Complaint, ¶¶ 85-106)

Plaintiff indicates that this cause of action, which pertains to allegedly deficient medical care, is brought under the authority of the Due Process and Equal Protection Clauses. According to Plaintiff, his right hand is "handicapped", and he is in "constant severe pain" "for the rest of his life, threatening his livelihood as a professional. . . . " Am. Compl., pp. 23-24. The hand condition apparently existed before Plaintiff was admitted to the BFDF. Plaintiff states that he also is "[s]uffering from severe loss of sight and vision, constant eyes pain, eyes balls [sic] vibration and dizziness, and [was] recently diagnosed with Glaucoma disease. . . ." <u>Id.</u>, p. 24.

A federal detainee's right to adequate medical care arises under the Due Process Clause of the Fifth Amendment, not the Eighth Amendment. However, a claim for denial of medical treatment under the Fifth Amendment is analyzed under the same deliberate indifference test as a claim arising under the Eighth Amendment. Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (stating that the Eighth Amendment's two-pronged deliberate indifference test applies to a Bivens action involving allegedly deficient medical care).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003) (quotation omitted). This standard includes both (1) an objective "medical need" element measuring the severity of the alleged deprivation, and (2) a subjective "deliberate indifference" element that asks whether the prison official acted with a sufficiently culpable state of mind. Smith, 316 F.3d 178, 183-84 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The objective prong requires that the detainee's medical condition be "sufficiently serious." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). The subjective prong requires that the prison official acted with a sufficiently culpable state of mind, one that is equivalent to criminal recklessness. Hemmings v.

Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (citing Hathaway, 99 F.3d at 553). Thus, to state a Bivens claim for inadequate medical care, Plaintiff must allege that the defendants knew of, and disregarded, an excessive risk to his health or safety.

Even assuming that Plaintiff's alleged hand and eye conditions satisfy the objective prong and could be characterized as "serious medical conditions," the Amended Complaint fails to provide sufficient details to satisfy the subjective prong. Rather, the Amended Complaint assigns fault to all the defendants in rambling and conclusory terms. For instance, he asserts that "Defendants . . . ignored Plaintiff's . . . quest for medical attention through several request [sic] to the medical department, but continue to provide plaintiff with ibubrofen. . . while some of the nurses continues [sic] to deprive plaintiff's [sic] from taken [sic] the pain medication while suffering severe pain. . . ." Am. Compl., ¶ 86. Plaintiff asserts that Nurse Battaglia "constant[ly]" deprived him of his unspecified medication, but he only identifies two particular dates. Id., p. 84-85. These allegations are plainly insufficient to state a claim for the unconstitutional denial of adequate medical care. Moreover, Adekoya admits that Herron personally visited his cell on August 24, 2010, to speak with him about his medical condition. Although Adekoya complains that Herron failed to fulfill his promises of providing unspecified "medical

equipments," it cannot be said that Herron acted with deliberate indifference.

The Amended Complaint also does not sufficiently allege the purportedly excessive risks to Plaintiff's health or safety that any particular defendant knew of and disregarded. Furthermore, apart from the vague allegations against Nurse Battaglia, the Amended Complaint does not allege that any defendant actually was personally involved in the constitutional violations he asserts. Simply because former director Herron was in a position of supervisory authority is not enough to implicate him in the alleged constitutional violations. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.").

Finally, the Amended Complaint does not sufficiently allege that any particular defendant knowingly and recklessly took actions to produce the injuries Adekoya claims. See Smith, 316 F.3d at 184 (stating that because "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law not every lapse in prison medical care will rise to the level of a constitutional violation") (citing Gamble, 429 U.S. at 105-06).

Plaintiff also makes a passing attempt to bring his inadequate medical care claim within the ambit of the Equal Protection Clause, asserting that the "intentional disregard of plaintiff's medical condition by [all] defendants . . . individually and collectively subjected [him] to cruel and unusual punishment with deliberate indifference because [he] is an African immigrant of Spritism faith." Am. Compl., ¶ 86.

The Equal Protection Clause of the Fourteenth Amendment ensures that similarly situated persons are treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). This right to be protected from "invidious discrimination" extends to incarcerated persons. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Lee v. Washington, 390 U.S. 333 (1968)). The guarantee of the Equal Protection Clause safeguards not only groups of individuals, but also individuals who constitute a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) ("Olech"). In Olech, the Supreme Court held that where the plaintiff is not a member of a suspect or protected class, he still may assert an equal protection claim is based on a "class of one" theory, which requires the plaintiff to show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564.

Here, Plaintiff appears to claim that he is a "class of one" because he is a Spiritist of African descent. Plaintiff has not come close to sufficiently alleging facts that could be used to infer an allegation that similarly situated detainees were treated more favorably than he was. Indeed, Plaintiff fails to allege the existence of similarly situated individuals or that he was treated differently from those individuals. Basically, he is alleging that every other detainee at the BFDF was treated more favorably than he. Because Plaintiff has not adequately identified other individuals with whom he can be compared, his equal protection claim fails as a matter of law.

> **4.    Fourth Cause of Action: "The right of access to the courts/adequate law library" (Amended Complaint, ¶¶ 107-128)**

The constitutional right of access to the courts is protected by the First Amendment's right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 741 (1983). In addition, a corollary to the constitutional guarantee of due process of law is the requirement that prisoners be afforded access to the courts in order to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). There is no constitutionally guaranteed "abstract, freestanding right to a law

-28-

library or legal assistance." <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996) (discussing <u>Bounds v. Smith</u>, 430 U.S. 817 (1977)). Rather, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent actual, as opposed to theoretical, injury by prejudicing his pursuit of a non-frivolous legal claim. See <u>Lewis</u>, 518 U.S. at 348–55 & n. 3 (1996).

Here, Plaintiff alleges that defendants Buck and Finnigan committed the following unconstitutional acts: (1) "confiscated" a legal document that Plaintiff was printing in the law library; (2) read Plaintiff's legal documents; (3) refused to photocopy a grievance form; (4) required advance notice for making photocopies; (5) delayed in providing photocopies; (6) intentionally failed to copy legal documents; and (7) improperly denied requests for thirty extra minutes of time in the law library.   There are no other specific allegations made against the Federal Defendants with regard to the claim of denial of access to the courts.

Fatal to Plaintiff's "right of access" claims is his complete failure to adequately allege prejudice from the individual defendants' actions or omissions. Although alleges that he missed "court deadlines", he has not identified these with any specificity. Indeed, it appears from a review of the docket in this case that Plaintiff did not miss any deadlines. Because Plaintiff has failed to allege actual injury, his allegations are

insufficient to nudge his right-of-access claims over the line from theoretically possible to plausible. See Coleman v. Bartlett, 165 F.3d 13, 1998 WL 735904, at *1  (2d Cir. Oct. 16, 1998)(summary order) ("[T]he alleged three-day deprivation of access to the law library, without a showing of resulting harm, is insufficient to state a claim for relief.") (citing Jones v. Smith, 784 F.2d 149, 151-52 (2d Cir. 1986)); Shell v. Brzezniak, 365 F. Supp.2d 362, 372-73 (W.D.N.Y. 2005) (prisoner failed to state a valid § 1983 claim for denial of access to the courts due to interference with his legal mail because he could not show that prison defendants' conduct had any impact whatsoever on his pending legal action).

### 5.  Fifth Cause of Action: "Cruel and Unusual Punishment" (Amended Complaint, ¶¶ )

The allegations in this cause of action reiterate Plaintiff's claims, set forth in the Third Cause of Action, that Defendants failed to provide adequate medical treatment. They are dismissed for failure to state a claim as discussed above in this opinion.

Plaintiff also asserts that he was housed in a "cold cell locked in for eighteen (18) hours a day under cold air condition and freezing bricks [sic] wall that caused or trigger[ed] the severe and constant pain to [his] handicapped right hand. . . ." Am. Compl., p. 113.  Plaintiff cites the Eighth Amendment as the legal basis for this claim.

The Supreme Court has held that a detainee's claims of unconstitutional conditions of confinement are analyzed under the Fifth Amendment or Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition against cruel and unusual punishment, which applies only to sentenced inmates. Wolfish, 441 U.S. at 535. Adekoya's status as an alien detainee in a federal detention facility pursuant to federal immigration law means that his claims against Defendants arise under the Due Process Clause of the Fifth Amendment. See Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment.") (cited in DeBoe v. DuBois, 503 F. App'x 85, 87, 2012 WL 5908447, at *2 (2d Cir. Nov. 27, 2012) (unpublished opn.)).

Under the Due Process Clause of the Fifth Amendment, a detainee held in federal custody has no right to be "free from discomfort" but does enjoy the right to be free from being subjected to conditions of confinement while awaiting trial which "amount to punishment," Wolfish, 441 U.S. at 535 (noting that "[u]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). "[A]lthough a pretrial inmate mounting a constitutional

challenge to environmental conditions *must show deliberate indifference*, it may generally be presumed from an absence of reasonable care." Benjamin v. Fraser, 343 F.3d 35, 50 (2d Cir. 2003) (emphasis supplied) (citing County of Sacramento v. Lewis, 523 U.S. 833, 853 (1998)), overruled on other grounds by Caiozzo v. Koreman, 581 F.3d 63, 70 (2d Cir. 2009). A prison official acts cannot be held liable under the Eighth Amendment unless he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he also "draw[s] the inference." Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'").

Here, even broadly construed, Plaintiff's allegations do not plausibly suggest deliberate indifference by any defendants in regards to the allegedly "cold" conditions to which he was subjected. Plaintiff does not allege with any specificity the degree of "cold air condition" to which he was exposed. Nor does he explain how his right hand is "handicapped" or why the allegedly cold conditions caused him to experience pain in that hand. Given the vagueness of his allegations, it is impossible for Plaintiff to plausibly allege that any defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, that those defendants also drew the inference, and that

those defendants then knowingly disregarded the risk. Accordingly, Plaintiff's conditions-of-confinement claim fails as a matter of law.

### 6.    Sixth Cause of Action: "Equal Protection of the Law" (Amended Complaint, ¶¶ 130-152)

Although this cause of action is titled, "Equal Protection of the Law," it is simply a rehashing of claims found elsewhere in the Amended Complaint. The allegations are inadequate as a matter of law as discussed above in this opinion.

## V.   Defendant Battaglia's Motion to Dismiss

Under F.R.C.P. 11(b), any party-whether represented or <u>pro se</u>-must certify that a pleading submitted to the court is, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" "the claims . . . are warranted by existing law" "and the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ." FED. R. CIV. P. 11(b)(2). If, after notice and a reasonable opportunity to respond, the district court finds that F.R.C.P. 11(b) has been violated, it may impose a sanction upon the responsible party, including monetary sanctions and dismissal of the action. <u>Dome Patent L.P. v. Permeable Technologies, Inc.</u>, 190

F.R.D. 88, 90 (W.D.N.Y. 1999) (citing <u>Carman v. Treat</u>, 7 F.3d 1379, 1382 (8th Cir. 1993)).

Here, Nurse Battaglia seeks only dismissal of Plaintiff's § 1983 suit; she does not request any monetary sanctions against him. In light of the Court's dismissal of all potential claims against Nurse Battaglia, her motion to dismiss under F.R.C.P. 11 is moot.

## VI.  Supplemental Jurisdiction

Plaintiff asserts jurisdiction under various New York state statutes (i.e., "New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 and New York City Human Rights Law, N.Y. Admin. Code §§ 8-101 to 131." Amend. Compl., p. 2). As discussed above, the Court has dismissed all of Plaintiff's federal claims. Plaintiff has not asserted diversity jurisdiction which, in any event, is lacking over Plaintiff's state law claims.

The only way that Plaintiff's state law claims may proceed in this action is if the Court were to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a), which states in relevant part that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, Section

1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c).

This is one of those "usual case[s] in which all federal-law claims are eliminated before trial," and "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc., 712 F.3d 705, 727 (2d Cir. 2013) (citations and internal quotation marks omitted). All of the pertinent factors weigh against exercising supplemental jurisdiction; indeed, it would be an abuse of this Court's discretion to allow Plaintiff's state law claims to proceed in light of the dismissal of Plaintiff's federal claims. See Saint Vincent Catholic Medical Centers v. Morgan Stanley Inv. Mgmt., Inc., No. 09 Civ. 9730(PKC), 2010 WL 4007224, at *6-7 (S.D.N.Y. Oct. 4, 2010), aff'd sub nom. Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc., 712 F.3d 705, 727 (2d Cir. 2013).

## VII. Conclusion

For the reasons discussed above, the Federal Defendants' motion to dismiss [#21] is granted to the extent that the Court agrees that Plaintiff has failed to state claims upon which relief may be granted and therefore all claims against the Federal Defendants are dismissed with prejudice. The motion is denied to the extent that the Federal Defendants assert lack of subject matter jurisdiction.

The Court <u>sua</u> <u>sponte</u>, under the authority of 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), hereby dismisses the amended complaint in its entirety with prejudice against *all* remaining defendants, including Nurse Battaglia and the Contractor Defendants, for failure to state a claim upon which relief may be granted. There being no basis to exercise supplemental jurisdiction, Plaintiff's pendent state law claims are dismissed with prejudice.

Nurse Battaglia's motion for dismissal [#28] pursuant to F.R.C.P. 11 is denied as moot in light of the Court's dismissal of the amended complaint against her for failure to state a claim.

The amended complaint [#7] is dismissed in its entirety with prejudice.

The Court hereby certifies that any appeal from this Decision and Order would not be taken in good faith and therefore denies

-36-

leave to appeal as a poor person. Any further requests for poor person status must be made, on motion, to the Second Circuit.

The Clerk of the Court is requested to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     November 19, 2013
           Rochester, New York